UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

STATE AUTOMOBILE MUTUAL
INSURANCE COMPANY,                                                    Plaintiff,

v.                                            Civil Action No. 3:19-cv-513-DJH-RSE

ST. STEPHEN'S CEMETERY
ASSOCIATION et al.,                                                   Defendants.

* * * * *

**<u>MEMORANDUM OPINION & ORDER</u>**

Plaintiff State Automobile Mutual Insurance Company brought this declaratory-judgment

action to resolve a dispute over the scope of insurance coverage arising out of a pending action in

Jefferson Circuit Court.  (Docket No. 1, PageID # 1)  For the reasons set forth below, the Court

will deny State Auto's motion for partial summary judgment.

**I.**

**A.       The Insurance Policies**

From 1992 to 2018, Plaintiff State Automobile Insurance Company issued annual primary

insurance policies[1] to Defendant St. Stephen's Cemetery Association.  (D.N. 41, PageID # 530)

These policies provided commercial general liability coverage.  (*Id.*, PageID # 535)  The relevant

portion of the insurance policies for the declaratory judgment is "Coverage A Bodily Injury and

Property Damage Liability," which provides:

> [State Auto] will pay those sums that the insured becomes legally obligated to pay
> as damages because of "bodily injury" or "property damage" to which this
> insurance applies.  [State Auto] will have the right and duty to defend the insured
> against any "suit" seeking those damages.  However, [State Auto] will have no duty

---

[1] Each policy began on February 15 and ran through February 15 of the following year.  *See, e.g.*,
D.N. 41-3, PageID # 587)  For the purposes of this Order, the Court refers to the insurance policies
by the year they were issued.

to defend the insured against any "suit" seeking those damages for "bodily injury" or "property damage" to which this insurance does not apply. [State Auto] may, at [its] discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

(D.N. 41-17, PageID # 1536[2]) The coverage "applies to 'bodily injury' and 'property damage' only if" the "'bodily injury' or 'property damage' occurs during the policy period." (*Id.*)

The policies define "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." (*Id.*, PageID # 1547) "Property damage" has two definitions in the policies. First, "property damage" includes "[p]hysical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it." (*Id.*, PageID # 1549) Second, "property damage" includes the "[l]oss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it." (*Id.*, PageID # 1550)

The policies in effect from February 15, 2008, to February 15, 2018, contain a funeral-services exclusion and a professional-services exclusion, which explain circumstances where the insurance coverage does not apply.[3] (D.N. 41, PageID # 531) The funeral-services exclusion provides: "[t]his insurance does not apply to 'bodily injury', [sic] 'property damage' or 'personal and advertising injury' arising out of errors or omissions in the handling, embalming, disposal,

---

[2] The Court cites the 2008 policy (D.N. 41-17) to provide an example of the provisions that are consistent throughout each of the insurance policies. Where the policies contain changes, the Court specifically identifies the policy or policies being discussed.

[3] Although not explicitly addressed by State Auto in its motion for partial summary judgment, these are not necessarily new exclusions; the two exclusions also appeared in the pre-2008 policies. (*See, e.g.*, D.N. 41-16, PageID # 1424–25) In its reply, State Auto acknowledges that these exclusions existed in the pre-2008 policies but argues that this fact is irrelevant since the exclusions in the pre-2008 policies are not at issue in the motion for partial summary judgment. (D.N. 53, PageID # 2976)

burial, cremation or disinterment of dead bodies." (D.N. 41-17, PageID # 1535)  The professional-services exclusion provides: "[t]his insurance does not apply to 'bodily injury', 'property damage' or 'personal and advertising injury' due to the rendering of or failure to render any professional service."  (*Id.*, PageID # 1468)  This exclusion provides a space for the parties to provide a "Description of Professional Services."  (*Id.*)  The 2008, 2010, 2011, and 2014 insurance policies list "cemeteries" as a description of the professional services in the space provided.  (D.N. 41-17, PageID # 1468; D.N. 41-19, PageID # 1856; D.N. 41-20, PageID # 1920; D.N. 41-23, PageID # 2466)  The 2009, 2012, 2013, 2015, 2016, and 2017 insurance policies, on the other hand, provide no description of professional services in the space provided.  (D.N. 41-18, PageID # 1658; D.N. 41-21, PageID # 2127; D.N. 41-22, PageID # 2243; D.N. 41-24, PageID # 2564; D.N. 41-25, PageID # 2714; D.N. 41-26, PageID # 2849)

**B.      The Underlying Action**

Defendants Tina Seaton, Pamela Wilkerson, Kelly Bryant, Crystal Ray, and Tina Clark (the underlying plaintiffs) brought a putative class action in Jefferson Circuit Court against Defendants St. Stephen's Cemetery Association; Bruce D. Zimmerman, Sr.; Herb Zimmerman; Tony Bostic; Mark Holland; and Barbara Ann Houser (the underlying defendants).  (D.N. 1-2, PageID # 16)  The putative class consists of "citizens of the United States of America who purchased, or whose family member(s) purchased, cemetery plots, headstones, burial services and other products and services from Defendants, and/or whose family members are buried, or are presumed to be buried, at St. Stephen's Cemetery."  (*Id.*, PageID # 17)  The underlying action seeks to certify four subclasses:

> Subclass 1 – Lost and/or misplaced remains
>
> All individual citizens of the United States of America whose loved ones were buried or interred at St. Stephen's Cemetery from 1992 to present, and whose

remains can no longer be located and/or whose loved ones' remains were exhumed without knowledge or consent and/or those whose loved ones have been buried in a single plot containing multiple people.

Subclass 2 – Improper Maintenance of Graves

All individual citizens of the United States of America whose loved ones were buried or interred at St. Stephen's Cemetery from 1992 to present, and whose remains were improperly interred or improperly maintained, including, but not limited to, improper maintenance of loved ones' headstones and the grounds surrounding their loved ones' graves resulting in property damage, in violation of Kentucky law.

Subclass 3 – Failure to provide headstones

All individual citizens of the United States of America who purchased, or whose loved ones purchased, headstones from Defendants from 1992 to present, and who did not receive the headstones they purchased.

Subclass 4 – Sale of previously sold or occupied cemetery plots.

All individual citizens of the United States of America who[] have or whose loved ones have purchased a grave plot from Defendants from 1992 to present that is currently occupied by someone other than the purchaser, or the person the purchaser allowed to be buried in the plot, or has been sold to someone else.

(*Id.*, PageID # 24)

The state-court complaint alleges violations of the Kentucky Consumer Protection Act, unjust enrichment, negligence and negligence per se, negligent trespass, nuisance, desecration of a grave, outrage/negligent infliction of emotional distress, wrongful mishandling of a corpse, and negligent supervision and retention. (*Id.*, PageID # 29–41) The underlying plaintiffs seek certification of a class action, compensatory damages, punitive damages, pre-judgment interest, attorneys' fees, injunctive relief, appointment of a receiver for St. Stephen's, a full accounting of the final resting place of all bodies buried at St. Stephen's, and a preliminary injunction enjoining the underlying defendants from "continuing to take any wrongful actions such as those set forth in this Complaint." (*Id.*, PageID # 42–43) At the time of the parties' filings, the state court had not

ruled on the motion to certify the class action or the underlying defendants' motion for summary judgment.[4]  (D.N. 47, PageID # 2918)  Although State Auto is not a party to the underlying action, it has been defending the underlying defendants under the insurance policies in effect from 1992 to 2008.  (D.N. 41, PageID # 531)

## C.     The Declaratory-Judgment Action

On July 15, 2019, State Auto brought this declaratory-judgment action against the underlying plaintiffs and defendants.[5]  (D.N. 1)  State Auto seeks four declaratory judgments: first, that State Auto has no duty to defend or indemnify the underlying defendants under the post-2008 insurance policies because the funeral-services exclusion precludes coverage over the claims in the underlying action; second, that State Auto has no duty to defend or indemnify the underlying defendants under the post-2008 insurance policies because the professional-services exclusion precludes coverage over the claims in the underlying action; third, that State Auto has no duty to indemnify the underlying defendants under the pre-2008 insurance policies for alleged damages in the underlying action that occurred after February 15, 2008; and fourth, that State Auto has no duty to indemnify the underlying defendants for "[d]isgorgement and/or restitution of ill-gotten gains" because they do not constitute "damages" within the meaning of the insurance policies. (*Id.*, PageID # 9–12)  In sum, State Auto asks the Court to declare that State Auto owes no duty to indemnify against any claims in the underlying state-court action that accrued after February 15, 2008.  (D.N. 41, PageID # 531–32)

---

[4] Neither party has informed the Court of any change in the status of these motions while the matter has been pending.

[5] The complaint initially named Robin Thomas as a defendant (*see* D.N. 1), but she was dismissed from the declaratory-judgment action after she was dismissed from the underlying state-court action.  (D.N. 35)

State Auto seeks partial summary judgment on its first three requests for declaratory judgment.  (D.N. 41, PageID # 546)  State Auto has identified twenty-seven specific claims[6] where the individual involved either died or was buried after February 15, 2008.  (*Id.*, PageID # 533)  In State Auto's view, the pre-2008 policies do not apply to these twenty-seven claims in the underlying action because the claims accrued after these policies expired.  (*Id.*, PageID # 538–39)  State Auto also argues that the funeral-services exclusion and the professional-services exclusion in the post-2008 policies operate as a blanket exclusion of insurance coverage for the twenty-seven claims identified in the underlying action.  (*Id.*, PageID # 540)

## II.

Summary judgment is required when the moving party shows, using evidence in the record, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  For purposes of summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party.  *Loyd v. Saint Joseph Mercy Oakland*, 766 F.3d 580, 588 (6th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).  However, the Court "need consider only the cited materials."  Fed. R. Civ. P. 56(c)(3); *see Shreve v. Franklin Cnty., Ohio*, 743 F.3d 126, 136 (6th Cir. 2014).  If the nonmoving party "fails to properly support an assertion of fact or fails to properly address another party's

---

[6] State Auto relies on St. Stephen's responses to requests for admission to conclude that twenty-seven individuals died or were buried after February 15.  (D.N. 41, PageID # 533)  The exhibit submitted by State Auto only clearly identifies twenty-four individuals who were buried after February 15, 2008.  (*See* D.N. 41-2)  Of those twenty-four, it appears that, in two separate requests for admission, St. Stephen's identifies an individual with the same name as being buried after February 15, 2008.  (*Id.*, para. 18, 27)  There are two responses where St. Stephen's refers to an attachment that is not included in the exhibit.  (*Id.*, para. 1, 20)  At most, the exhibit submitted by State Auto could be interpreted as admitting that there are twenty-six individuals who died or were buried after February 15, 2008.  Because the specific number of individuals buried after February 15, 2008, is not material to the Court's Order, the Court uses the number twenty-seven for simplicity.

assertion of fact as required by Rule 56(c)," the fact may be treated as undisputed.  Fed. R. Civ. P.

56(e)(2)–(3).  To survive a motion for summary judgment, the nonmoving party must establish a

genuine issue of material fact with respect to each element of each of its claims.  *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 322–23 (1986) (noting that "a complete failure of proof concerning an

essential element of the nonmoving party's case necessarily renders all other facts immaterial").

## A.      Declaratory Judgment Standard

Before evaluating the merits of the parties' arguments, the Court considers whether it

would be appropriate to exercise jurisdiction over the requests for declaratory judgment.  The

Declaratory Judgment Act provides, in relevant part:

> In a case of actual controversy within its jurisdiction . . . any court of the United
> States, upon the filing of an appropriate pleading, may declare the rights and other
> legal relations of any interested party seeking such declaration, whether or not
> further relief is or could be sought.  Any such declaration shall have the force and
> effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a).  "In passing the act, Congress 'created an opportunity, rather than a duty, to

grant a new form of relief to qualifying litigants.'"  *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546,

554 (6th Cir. 2008) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995)).  The Sixth

Circuit therefore affords district courts "substantial discretion to exercise jurisdiction 'in the first

instance, because facts bearing on the usefulness of the declaratory judgment remedy, and fitness

of the case for resolution, are peculiarly within their grasp.'"  *Id.* (citing *Wilton*, 515 U.S. at 289).

The Court considers five factors to determine whether the exercise of jurisdiction under the

Declaratory Judgment Act is appropriate:

> (1) whether the declaratory action would settle the controversy; (2) whether the
> declaratory action would serve a useful purpose in clarifying the legal relations in
> issue; (3) whether the declaratory remedy is being used merely for the purpose of
> "procedural fencing" or to "provide an arena for a race for res judicata;" (4) whether
> the use of a declaratory action would increase friction between . . . federal and state

courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

*Grand Trunk W. R.R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984) (citations omitted).

These factors "direct the district court to consider three things: efficiency, fairness, and federalism." *W. World Ins. Co. v. Hoey*, 773 F.3d 755, 759 (6th Cir. 2014) (citing *Sherwin-Williams Co. v. Holmes Cnty.*, 343 F.3d 383, 390–91 (5th Cir. 2003)). "[The Sixth Circuit has] never indicated how [the] *Grand Trunk* factors should be balanced when reviewing a district court's decision for abuse of discretion." *Mass. Bay Ins. Co. v. Christian Funeral Dirs., Inc.*, 759 F. App'x 431, 442 (6th Cir. 2018) (quoting *Flowers*, 513 F.3d at 563). "The essential question is always whether a district court has taken a good look at the issue and engaged in a reasoned analysis of whether issuing a declaration would be useful and fair." *Id.* (quoting *Hoey*, 773 F.3d at 759); *see also Byler v. Air Methods Corp.*, 823 F. App'x 356, 365 (6th Cir. 2020) ("A proper exercise of discretion under the Declaratory Judgment Act includes a 'reasoned analysis of whether issuing a declaration would be useful and fair.'" (quoting *Hoey*, 773 F.3d at 759)).

**B.      Exclusions in the Post-2008 Policies**

State Auto seeks declaratory judgments that the funeral-services exclusion and the professional-services exclusion preclude coverage under the post-2008 insurance policies for the twenty-seven individual claims in the underlying action. (D.N. 41, PageID # 546) The Court will consider these declaratory-judgment requests together because the *Grand Trunk* analysis overlaps for the two exclusions.

**1.      Settlement of the Controversy and Clarification of the Legal Relations**

The first and second *Grand Trunk* factors are often considered together "[b]ecause 'it is almost always the case that if a declaratory judgment will settle the controversy, . . . it will clarify

the legal relations in issue.'" *United Specialty Ins. Co. v. Cole's Place, Inc.*, 936 F.3d 386, 397 (6th Cir. 2019) (quoting *Flowers*, 513 F.3d at 557). The Sixth Circuit has produced two lines of cases regarding when a declaratory judgment would settle the controversy "in the context of an insurance company's suit to determine its policy liability." *Flowers*, 513 F.3d at 555. One line of cases "hold[s] that a declaratory judgment regarding coverage does 'settle the controversy,' because it resolves the dispute between the insurer and insured over who will pay for the state-court litigation." *Cole's Place*, 936 F.3d at 397 (citations omitted). The second line of cases concludes that resolving the dispute between the insurer and the insured does "not settle the ultimate controversy between the parties which is ongoing in state court." *Flowers*, 513 F.3d at 555 (citing *Travelers Indem. Co. v. Bowling Green Prof'l Assoc.*, 495 F.3d 266, 272 (6th Cir. 2007)). "The difference between these lines of cases appears to rest on the competing policy considerations of consolidating litigation into one court versus permitting a party to determine its legal obligations as quickly as possible." *Id.*

Despite this inconsistency in circuit precedent, the Sixth Circuit has upheld a district court's exercise of jurisdiction where the declaratory judgment would "resolve, once and finally, the question of the insurance indemnity obligation of the insurer." *Flowers*, 513 F.3d at 557; *see also Cole's Place*, 936 F.3d at 397 ("[The Sixth Circuit's] most recent decisions have held that district courts did not abuse their discretion in concluding that a declaratory judgment would settle the controversy by resolving the issue of indemnity.").

Here, neither party asserts that the declaratory-judgment action would settle the underlying dispute. State Auto argues instead that the coverage dispute presents a purely legal question and

that resolution would thus "fully resolve the dispute between State Auto and the Insureds regarding the scope of insurance coverage afforded by the Policies."[7]  (D.N. 53, PageID # 2994)

But granting the declaratory judgment would only resolve the dispute with respect to twenty-seven claims, which is only a fraction of the claims in the underlying action.[8]  The declaratory judgment therefore would not "resolve, once and finally, the question of insurance indemnity obligation of the insurer" because State Auto may ultimately be required to indemnify the underlying defendants on the remaining claims.  *Flowers*, 513 F.3d at 557.  As a result, there would still be several questions of fact about the remaining class-action claims that would need to be resolved in the underlying action before the extent of State Auto's duty to indemnify the underlying defendants could be determined.

Further, as explained in detail below, *infra* Part II(B)(iii), the declaratory judgment would not settle the indemnity controversy even as to the twenty-seven claims because there are outstanding factual issues requiring resolution prior to a determination of whether the post-2008 insurance policies' exclusions apply to those claims.  *In re Ashland*, Nos. 14-cv-85, 14-cv-123, 2014 WL 12646055, at *5–6 (E.D. Ky. Dec. 23, 2014) (finding that the first and second *Grand Trunk* factors weigh against exercising jurisdiction where the parties would still have to await the outcome of state-court litigation to resolve the indemnity issues despite resolution of the legal

---

[7] The underlying plaintiffs are parties to this declaratory-judgment action, and exercising jurisdiction in this case does not raise concerns about the binding impact of a declaratory judgment on the parties in the underlying action.  *See Cole's Place*, 936 F.3d at 397 (noting that other Sixth Circuit decisions have held that a declaratory judgment "does not 'settle the controversy' between all relevant parties where, for instance, the state-court tort plaintiff has not been joined in the declaratory-judgment action").

[8] Although State Auto asserts that it is currently defending the underlying defendants on the remaining claims (D.N. 41, PageID # 531), nothing in this declaratory-judgment action would later preclude State Auto from filing another declaratory-judgment action over a coverage dispute about the remaining claims.

interpretation issues in a declaratory-judgment action); *see also Cole's Place*, 936 F.3d at 399 (noting that "the presence of factual issues that are also being decided in the state-court litigation usually cuts against finding that factors one and two are satisfied" (citing *Bituminous Cas. Corp. v. J & L Lumber Co., Inc.*, 373 F.3d 807, 815 (6th Cir. 2004))).  Since the declaratory-judgment action would not settle the controversy or clarify the legal relationship between State Auto and the underlying defendants, the first and second factors weigh against exercising jurisdiction.  *In re Ashland*, 2014 WL 12646055, at *5–6.

## 2.  *Res Judicata*

"The third factor to consider is whether the use of the declaratory judgment action is motivated by 'procedural fencing' or likely to create a race for *res judicata*."  *Flowers*, 513 F.3d at 558.  This factor is meant to "preclude jurisdiction for 'declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by a natural plaintiff and who seem to have done so for the purpose of acquiring a favorable forum.'"  *Id.* (*quoting AmSouth Bank v. Dale*, 386 F.3d 763, 788 (6th Cir. 2004)).  The factor is usually neutral "if the declaratory-judgment plaintiff filed *after* the commencement of litigation in state court."  *Cole's Place*, 936 F.3d at 399 (emphasis in original) (citation omitted).

In this case, State Auto filed the declaratory-judgment action after the second amended complaint was filed in the state-court action.  (D.N. 1, PageID # 1)  The defendants have presented no evidence that State Auto had an improper motive in filing the declaratory-judgment action.  Accordingly, the third factor is neutral.  *Cole's Place*, 936 F.3d at 399 (finding that the third *Grand Trunk* factor was neutral when the declaratory-judgment action is filed after the state-court action).

### 3. Encroachment on State Jurisdiction

When evaluating the fourth factor in the *Grand Trunk* analysis, the Court considers three

subfactors:

> (1) whether the underlying factual issues are important to an informed resolution of the case; (2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and (3) whether there is a close nexus between underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

*Mass. Bay*, 759 F. App'x at 439 (quoting *Flowers*, 513 F.3d at 560).

### a. First Subfactor

The first subfactor "focuses on whether the state court's resolution of the factual issues in

the case is necessary for the district court's resolution of the declaratory judgment action."

*Flowers*, 513 F.3d at 560. This factor weighs against exercising jurisdiction when a declaratory

judgment is dependent on factual findings that will be made by the state court. *Mass. Bay*, 759 F.

App'x at 440 (citing *Flowers*, 513 F.3d at 560).

State Auto argues that granting the requested declaratory judgments would only require the

Court to resolve "pure questions of law" and that the Court would not need to engage "in fact-

finding that [would] impact the Underlying Action." (D.N. 41, PageID # 546) In State Auto's

view, the Court could simply interpret the meaning of the two exclusions and conclude that the

exclusions preclude coverage over the twenty-seven claims that accrued during the post-2008

insurance policies. (*Id.*)

Even if the Court interpreted the meaning of the two exclusions, the Court could not

determine whether the twenty-seven claims fall within the meaning of the two exclusions without

also making factual findings. For example, the funeral-services exclusion excludes coverage for

any "bodily injury" or "property damage" "arising out of errors or omissions in the handling,

embalming, disposal, burial, cremation or disinterment of dead bodies." (D.N. 41, PageID # 540) State Auto contends that this provision excludes coverage for all four subclasses of the underlying action because the injuries in all four subclasses inherently "arise out of" an error or omission in the "handling, embalming, disposal, burial, cremation or disinterment" of a dead body. (*Id.*, PageID # 541–42) Subclass three, however, only brings claims concerning the failure to fulfill a contract for the purchase of a headstone. (D.N. 1-2, PageID # 24) A subclass-three claim could therefore be based on a failure to provide a headstone without any claim that an error or omission occurred in the "handling, embalming, disposal, burial, cremation or disinterment of dead bodies." Such a claim would not "arise out of" an error or omission concerning the handling of a dead body.

The applicability of the funeral-services exclusion will therefore depend on a factual finding that each of the claims in subclass three is also connected to an error or omission in the "handling, embalming, disposal, burial, cremation or disinterment of dead bodies." The state court will make these findings regarding the underlying facts of the subclasses' claims. This Court would risk making findings that conflict with the state-court findings if it exercised jurisdiction over the requests for declaratory judgment.[9] *See Mass. Bay*, 759 F. App'x at 439–440) (finding subfactor one weighed against exercising discretionary jurisdiction because issuing a declaratory judgment depended on factual findings that would be made by the state court); *see also Flowers*, 513 F.3d at 560 (finding that it is inappropriate to exercise jurisdiction when the federal court risks making factual findings that "might conflict with similar findings made by the state court").

---

[9] The risk of conflict with state-court factual findings is even greater in this case where the state court has not yet certified the class action. (D.N. 47, PageID # 2918) The factual allegations may be subject to further change if the state court concludes that the claims must be brought individually instead of in a class action.

The declaratory judgment for the professional-services exclusion would similarly require fact-finding that could conflict with state-court findings. In the 2008, 2010, 2011, and 2014 insurance policies, the professional-services exclusion specifically lists "cemeteries" in the space provided for a description of professional services. (D.N. 41-17, PageID # 1468; D.N. 41-19, PageID # 1856; D.N. 41-20, PageID # 1920; D.N. 41-23, PageID # 2466) In the 2009, 2012, 2013, 2015, 2016, and 2017 insurance policies, on the other hand, the space provided for a description of professional services is blank. (D.N. 41-18, PageID # 1658; D.N. 41-21, PageID # 2127; D.N. 41-22, PageID # 2243; D.N. 41-24, PageID # 2564; D.N. 41-25, PageID # 2714; D.N. 41-26, PageID # 2849) State Auto argues that despite the lack of description in some of the policies, a cross-reference to the insurance policies' declarations unambiguously indicates that the professional-services exclusion applies to general cemetery services. (D.N. 53, PageID # 2985–86)

A declaration in these insurance policies applies to the professional-services exclusion. (*See, e.g.*, D.N. 41-18, PageID # 1604) The declaration does not, however, contain any description of what constitutes a professional service; it only classifies the insured as "Cemeteries - Not-For-Profit Only." (*Id.*, PageID # 1603) The 2009, 2012, 2013, 2015, 2016, and 2017 insurance policies therefore do not define the meaning of "professional services." (*See id.*)

Where the insurance policy does not define "professional services," "Kentucky courts have recognized that the term 'professional services' is properly defined as requiring an exercise of judgment or training." *DiBeneditto v. Med. Protective Co.*, 3 F. App'x 483, 486 (6th Cir. 2001) (citing *Ratliff v. Emps.' Liab. Assur. Corp.*, 515 S.W.2d 225, 230 (Ky. 1974)); *see also Mass. Bay Ins. Co. v. Preferred Safety, LLC*, No. 5:19-cv-48-TBR, 2020 WL 4040367, at *4 (W.D. Ky. July 17, 2020); *Ensey ex rel. D.E. v. Shelter Gen. Ins. Co.*, No. 3:17-cv-642-RGJ, 2020 WL 807530, at

*3 n.4 (W.D. Ky. Feb. 18, 2020). The applicable definition of "professional services" therefore depends on which policy applies, which in turn depends on when each of the twenty-seven claims accrued—which is a factual finding that will be made by the state court. In addition, the Court would have to make factual findings to classify each of the twenty-seven claims into one of the four subclasses so that the Court could conduct an informed analysis of whether the twenty-seven claims involve services requiring the "exercise of judgment or training" where that definition is applicable to the claims. *DiBeneditto*, 3 F. App'x at 486 (citation omitted). Thus, the Court would need to make multiple factual findings as it considered the declaratory-judgment action for the professional-services exclusion. Because the interpretation of the two exclusions depends on the factual findings that will be made by the state court, the first subfactor weighs against exercising jurisdiction.[10] *Mass. Bay*, 759 F. App'x at 439–440; *see also Flowers*, 513 F.3d at 560 ("However, sometimes resolution of the issue raised in federal court will require making factual findings that might conflict with similar findings made by the state court. In such cases, the exercise of jurisdiction would be inappropriate." (internal citations omitted)).

**b.    Second Subfactor**

The second subfactor addresses which court "is in a better position to resolve the issues in the declaratory action." *Flowers*, 513 F.3d at 560. State courts are generally better situated to

---

[10] To the extent that State Auto argues that the Court need not resolve these issues and can instead issue narrowly-tailored declaratory judgments, such judgments would not "settle the controversy" or "clarify the legal relationship" between the parties because State Auto's duty to indemnify under the insurance policies would depend on how the state court resolves these factual issues. *See In re Ashland*, 2014 WL 12646055, at *6. The Court is therefore unpersuaded that it would be appropriate under the *Grand Trunk* analysis to exercise jurisdiction to issue such narrow declaratory judgments. In addition, the Court could not issue declaratory judgment with respect to a specific subclass because the parties have not categorized the twenty-seven claims at issue into the four subclasses. (*See* D.N. 41-2)

decide novel questions of state law, but this presumption has less force "when the state law is clear and when the state court is not considering the issues." *Id.*

At least some of the interpretation issues presented in the declaratory-judgment action—such as the doctrine of illusory coverage—could be decided by application of clearly established Kentucky law. *See Burlington Ins. Co. v. Greenwood Rollerdrome, Inc.*, 420 F. Supp. 3d 632, 639–40 (W.D. Ky. 2019) (finding that the doctrine of illusory coverage was not a novel issue of state law). The defendants have identified no novel issue of law necessary for this Court to resolve as it considers the request for declaratory judgment. In the absence of a novel issue of state law, the second subfactor therefore supports exercising jurisdiction. *Cole's Place*, 936 F.3d at 401.

### c. Third Subfactor

"The third subfactor 'focuses on whether the issue in the federal action implicates important state policies and is, thus, more appropriately considered in state court.'" *Mass. Bay*, 759 F. App'x at 440 (quoting *Flowers*, 513 F.3d at 561). The Sixth Circuit often "recognize[s] that state courts are better positioned to resolve insurance disputes because they are more familiar with the governing laws, and those laws are enacted to protect the citizens of the state." *Id.* (citations omitted).

The parties have identified no issues of federal law and instead only argue about the application of Kentucky law to an insurance policy.[11] (D.N. 41, PageID # 531–32; D.N 47, PageID # 2916; D.N. 48, PageID # 2940–41; D.N. 49, PageID # 2946–47) Because the Sixth Circuit has repeatedly recognized that state courts are in a better position to resolve such disputes, the third subfactor counsels against exercising jurisdiction. *Mass. Bay*, 759 F. App'x at 440 (citations

---

[11] The underlying plaintiffs' claims concerning the operation of St. Stephen's cemetery also raise only issues of Kentucky law, not federal law. (*See* D.N. 1-2, PageID # 29–41)

omitted); *see also Cole's Place*, 936 F.3d at 401 ("Furthermore, even in cases where state law has not been difficult to apply, [the Sixth Circuit] has usually found that the interpretation of insurance contracts is closely entwined with state public policy." (citations omitted)).

In sum, two of the three subfactors militate against exercising jurisdiction. Because resolution of the declaratory-judgment action would require findings of fact that could conflict with the state court's, the Court concludes that the fourth *Grand Trunk* factor as a whole weighs against exercising jurisdiction. *See Mass. Bay*, 759 F. App'x at 440–41) (finding that a district court did not abuse its discretion by concluding that the fourth factor weighed strongly against exercising jurisdiction because the federal court's factual findings might conflict with the state-court action).

### 4.    Alternative Remedy

The fifth factor directs the court to consider whether there is a better or more effective alternative remedy. *Id.* at 441. Kentucky law provides an avenue for insurers to seek declaratory relief in state court. *Flowers*, 513 F.3d at 562 (citing Ky. Rev. Stat. § 418.040). Although the Sixth Circuit has not clearly stated whether such alternative remedies are superior to filing a declaratory-judgment action in federal court, it has concluded that this factor counsels against exercising jurisdiction when the plaintiff could have filed a declaratory-judgment action in Kentucky state court. *Cole's Place*, 936 F.3d at 401 (concluding that the district court did not "abuse its discretion in finding that the availability of a state-court alternative undermines the argument for jurisdiction").

Here, State Auto could seek declaratory relief through Ky. Rev. Stat. § 418.040. *Cole's Place*, 936 F.3d at 401. Even though this remedy would provide the same relief, "the state remedy has the advantage of allowing the state court to apply its own law," and State Auto makes no

argument that this alternative remedy would afford insufficient relief. *Id.* As a result, the fifth factor also weighs against exercising jurisdiction. *Id.*

### 5. Balancing the *Grand Trunk* Factors

Here, the first, second, fourth, and fifth factors weigh against exercising jurisdiction, while the third factor is neutral. Although there are circumstances in which a declaratory judgment would provide a final answer about an insurance company's duty to indemnify an insured, such circumstances do not exist here. The record in this case presents multiple factual issues that would need to be resolved by the state court before the Court could determine whether State Auto's insurance policies exclude coverage for the underlying action. In short, State Auto's request is not a simple matter of applying one insurance policy to an undisputed set of facts. Instead, State Auto seeks a declaration that two policy exclusions offer blanket protection from a class action made up of four subclasses with different claims. Under these circumstances, the Court finds that it would not be appropriate to exercise discretionary jurisdiction over State Auto's requests for declaratory judgment. *See Flowers*, 513 F.3d at 560 (finding that the "exercise of jurisdiction [is] inappropriate" where the Court would be required to resolve issues of fact that could conflict with state-court findings).

## C. Pre-2008 Policies

State Auto also seeks a declaratory judgment that the pre-2008 insurance policies do not provide coverage for the twenty-seven claims that accrued after February 15, 2008. (D.N. 41, PageID # 538–39)

### 1. Settlement of the Controversy and Clarification of the Legal Relations

State Auto argues that a declaration will give "all parties a concrete understanding and legal ruling as to what insurance is or is not available for the claims pending in the Underlying Action."

(D.N. 41, PageID # 545)  As discussed previously, *supra* Part II(B)(i), the declaratory judgment State Auto seeks would only apply to twenty-seven claims and would do nothing to settle the coverage dispute concerning the numerous remaining claims in the underlying action.  *Flowers*, 513 F.3d at 557.  The requested relief also would not "resolve, once and finally, the question of the insurance indemnity obligation of the insurer" with respect to the twenty-seven claims because State Auto may ultimately be required to provide insurance coverage for those claims under the post-2008 insurance policies.  *Flowers*, 513 F.3d at 557.  Since State Auto's obligation to indemnify the underlying defendants for the claims in the underlying action would still be dependent on resolution of factual issues by the state court, the requested declaratory relief would not "settle the controversy" or "clarify the legal relationship" between the parties.  *In re Ashland*, 2014 WL 12646055, at *5–6; *see also Emps. Mut. Cas. Co. v Reilly Plating Co.*, No. 08-12145, 2008 WL 4757315, at *3 (E.D. Mich. Oct. 29, 2008) ("In fact, a determination in this lawsuit will not result in a conclusive pronouncement on whether EMC must indemnify Reilly Plating at all, since there are certain categories of damages claimed by the state court class-action plaintiffs that may fall within the scope of the CGL policy and some that do not.").  The first and second factors therefore weigh against exercising jurisdiction.

## 2. *Res Judicata*

As noted above, *supra* Part II(B)(ii), State Auto filed this declaratory-judgment action after the second amended complaint was filed in the underlying action, and the third factor is therefore neutral.  *See Cole's Place*, 936 F.3d at 399 (finding that the third *Grand Trunk* factor was neutral when the declaratory-judgment action is filed after the state-court action).

### 3. Encroachment on State Jurisdiction

The only relevant factual issue here—whether the twenty-seven claims accrued after the expiration of the pre-2008 policy—appears to be undisputed since St. Stephen's has admitted to twenty-seven individuals being buried after February 15, 2008.  (*See generally* D.N. 41-2)  Because the state court will not need to resolve this factual issue, the first subfactor supports the exercise of jurisdiction.  *See Cole's Place*, 936 F.3d at 400–01.  The second subfactor likewise weighs in favor of exercising jurisdiction, as the defendants have identified no novel issue of law that the Court would be required to decide in order to resolve the request for declaratory judgment.  *See id.* at 401.  Finally, the parties have identified no issues of federal law; thus, because state courts are in a better position to resolve disputes over insurance coverage, the third subfactor counsels against exercising jurisdiction.  *Mass. Bay*, 759 F. App'x at 440 (citations omitted); *see also Cole's Place*, 936 F.3d at 401 ("Furthermore, even in cases where state law has not been difficult to apply, [the Sixth Circuit] has usually found that the interpretation of insurance contracts is closely entwined with public policy." (citations omitted)).  With respect to this request for declaratory judgment, two of the three subfactors weigh in favor of exercising jurisdiction.  The Court therefore concludes that the fourth factor weighs in favor of exercising jurisdiction.

### 4. Alternative Remedy

The fifth factor determines whether there is a more effective remedy than a federal declaratory-judgment action.  As discussed above, *supra* Part II(B)(iv), state law affords State Auto a means to obtain declaratory relief in state court.  Ky. Rev. Stat. § 418.040; *see Cole's Place*, 936 F.3d at 401.  As a result, the fifth factor weighs against exercising jurisdiction.  *Cole's Place*, 936 F.3d at 401.

**5.** **Balancing the *Grand Trunk* factors**

Here, the first, second, and fifth factors weigh against jurisdiction; the third factor is neutral; and the fourth factor supports exercising jurisdiction. While this request for declaratory relief presents a purely legal question, the Court finds that, in sum, the factors militate against exercising jurisdiction. Declaratory judgment would not finally resolve the question of whether State Auto must indemnify the underlying defendants in the state-court action.

**D.** **Remaining Claims**

In its motion for partial summary judgment, State Auto makes no request with respect to the fourth request for declaratory judgment in the complaint or Defendants Holland; Zimmerman, Sr.; Bostic; and Zimmerman's counterclaim for declaratory judgment. In light of the Court's decision to decline jurisdiction over State Auto's first three requests for declaratory judgment, the Court will order supplemental briefing on whether the Court should exercise jurisdiction over the two remaining requests for declaratory judgment.

**III.**

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1)     State Auto's motion for partial summary judgment (D.N. 41) is **DENIED**. The Court **DECLINES** to exercise jurisdiction over the first three requests for declaratory judgment. State Auto's first three requests for declaratory judgment are therefore **DISMISSED without prejudice**.

(2)     The parties shall provide additional briefing on whether the Court should exercise discretionary jurisdiction over State Auto's remaining request for declaratory judgment. State Auto shall file its supplemental brief within **twenty-one (21) days** of the entry of this Order. The defendants shall file a supplemental response within **twenty-one (21) days** of the filing of State Auto's supplemental brief. There shall be no replies.

(3)     The parties shall provide additional briefing on whether the Court should exercise discretionary jurisdiction over Defendants Holland; Zimmerman, Sr.; Bostic; and Zimmerman's counterclaim for declaratory judgment. Defendants Holland; Zimmerman, Sr.; Bostic; and Zimmerman shall file their supplemental brief within **twenty-one (21) days** of the entry of this Order. State Auto and the remaining defendants shall file a supplemental response within **twenty-one (21) days** of the filing of Defendants Holland; Zimmerman, Sr.; Bostic; and Zimmerman's supplemental brief. There shall be no replies.

July 13, 2021

David J. Hale, Judge
United States District Court